**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Kelly Bologna,                                )     No. CV 09-01288-PHX-NVW (MEA)
                                              )
            Plaintiff,                        )     **ORDER**
                                              )
vs.                                           )
                                              )
C. Renault, et al.,                           )
                                              )
            Defendants.                        )
                                              )
_____               )

Plaintiff Kelly Bologna brought this civil rights action under 42 U.S.C. § 1983 against various Arizona Department of Corrections (ADC) employees (Doc. 7). Before the Court are the parties' cross-motions for summary judgment (Docs. 96, 111).

Plaintiff's motion will be denied, and Defendants' motion will be granted.

**I.      Procedural Background**

Plaintiff's claims arose in October 2008 during her confinement at the Arizona State Prison Complex (ASPC)-Lewis Rast Unit in Buckeye, Arizona (Doc. 7 at 1).[1] In Count I, relating to grievance #L22-016-009, Plaintiff alleges that Correctional Officers Christina Renault and Dolores Valenzuela acted with deliberate indifference to threats to Plaintiff's safety by refusing to grant Plaintiff "Do Not House With" status separating her

_____

[1] Consistent with Plaintiff's First Amended Complaint and Ninth Circuit case law involving a prisoner's gender dysphoria/transsexualism, the Court uses feminine pronouns to refer to Plaintiff (see Doc. 7 at 3B). See Schwenk v. Hartford, 204 F.3d 1187, 1192 n. 1 (9th Cir. 2000).

from an inmate who assaulted her (id. at 3-3A). In Count II, relating to grievance #L22-004-009, Plaintiff alleged that ADC dentists Dr. Gary Grant, Dr. Raphael Ricard, and Dr. Gregory Joseph acted with deliberate indifference to Plaintiff's serious dental needs by depriving her of adequate pain medication (id. at 4-4D).

Plaintiff moved for summary judgment on both counts (Doc. 96), and Defendants responded and cross-moved (Doc. 111). Plaintiff filed a combined reply in support of her motion and response to Defendants' cross-motion (Doc. 124).[2] The parties each submitted a separate Statement of Facts (Doc. 97, Pl.'s Statement of Facts (PSOF); Doc. 112 at 5-18, Defs.' Statement of Facts (DSOF)) and a Statement of Controverting Facts (Doc. 112 at 1-5, (DSCF); Doc. 124, (PSCF)). Plaintiff supports her factual assertions with her own declaration and attached exhibits, including copies of inmate letters, ADC policies, interrogatory responses, and medical records (Doc. 97, Attach. 1, Exs. A-Y). Defendants support their factual assertions with their own declarations and various attachments (Doc. 112, Exs. A-F).[3]

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together

---

[2]After Plaintiff filed her combined response-reply, the Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), that advised Plaintiff of her obligation to respond to Defendants' cross-motion (Doc. 127). The Court provided Plaintiff time to supplemental her response (id.), but she opted not to file a supplemental memorandum (Doc. 128).

[3]Each party objects to numerous factual assertions set forth by the opposing party (Docs. 112 (DSCF), 124 (PSCF)). The Court addresses some of the objections herein; however, those objections regarding factual assertions that are immaterial or that are repetitive and simply restate the parties' disputes, are not specifically addressed.

1  with affidavits, that it believes demonstrate the absence of a genuine issue of material

2  fact.  Celotex, 477 U.S. at 323.

3       If the movant meets its initial responsibility, the burden then shifts to the

4  nonmovant to demonstrate the existence of a factual dispute and that the fact in

5  contention is material, i.e., a fact that might affect the outcome of the suit under the

6  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

7  jury could return a verdict for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S.

8  242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th

9  Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its

10  favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968);

11  however, it must "come forward with specific facts showing that there is a genuine issue

12  for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

13  (1986) (internal citation omitted); see Fed. R. Civ. P. 56(c)(1).

14       At summary judgment, the judge's function is not to weigh the evidence and

15  determine the truth but to determine whether there is a genuine issue for trial.  Anderson,

16  477 U.S. at 249.  In its analysis, the court must assume the nonmovant's evidence to be

17  true and draw all inferences in the nonmovant's favor.  Id. at 255.

18  **III.**    **Count I—Threat to Safety**

19      **A.**    **Facts**

20       On October 20, 2008, inmate Rowland attacked Plaintiff in the sallyport of

21  Building 1 in the Rast Unit, which caused Plaintiff a broken jaw, split gums, several

22  loosened teeth, a split right ear, and a sprained finger on her right hand (PSOF ¶ 7).[4]

23

24      [4]Defendants object to PSOF ¶ 7 on the ground that it lacks foundation as to who

25  attacked Plaintiff (DSCF ¶ 7).  The objection is overruled; Plaintiff has personal knowledge to testify as to who attacked her, and this factual assertion is supported by her sworn

26  statement (Doc. 97-1 at 5-6, Pl. Decl. ¶ 9).  Also, Defendants assert that "the only basis for identification given is in a report" that they claim is insufficient, but they do not identify this

27  report or cite to it in the record (DSCF ¶ 7).  See LRCiv 56.1 (for any paragraph of the

28  movant's separate statement of facts that the nonmovant disputes, the nonmovant must provide a reference to the specific admissible portion of the record that supports the

1   Plaintiff initiated the grievance procedure informally for grievance #L22-016-009 by an

2   inmate letter dated October 24, 2008 (Docs. 13 at 6, 13-1 at 22).  The inmate letter

3   identifies the subject of the letter as "10-20-08 Assault by inmate Nicholas

4   Rowlands/Informal Resolution" (Doc. 13-1 at 22).  It states that Renault attempted to

5   house Plaintiff in an area where Plaintiff had a "Do Not House With" order regarding

6   another inmate after Plaintiff had several conversations with Renault concerning

7   Renault's relationship with Rowland.  It also states that Rowland told Plaintiff specific

8   details about the conversations that Rowland could have only learned from Renault.  It

9   further states that on October 8, 2008, Valenzuela told Plaintiff that Rowland knew

10  Plaintiff "was snitching on him," and on October 20, 2008, Rowland assaulted Plaintiff.

11  Through the informal grievance procedure initiated by the October 24, 2008 inmate letter,

12  Plaintiff sought to press charges against Rowland, have Renault charged with conspiracy

13  and fired, and have Renault and Rowland pay for Plaintiff's medical bills.  The October

14  24, 2008 inmate letter does not allege that Plaintiff made any oral or written requests to

15  be housed separately from Rowland.

16       On November 24, 2008, Plaintiff formally initiated grievance #L22-016-009 by

17  submitting an Inmate Grievance to appeal the response to her request for informal

18  resolution dated October 24, 2008 (Doc. 13-1 at 24).  On the Inmate Grievance form,

19  Plaintiff states that Renault and Valenzuela should be investigated and fired because

20  Renault told Rowland that Plaintiff had exposed their relationship and because

21  Valenzuela knew about it and failed to protect Plaintiff.  The Inmate Grievance states that

22  on October 8, 2008, Valenzuela told Plaintiff that Rowland knew that Plaintiff "was

23  snitching on him."  It does not allege that Plaintiff made any oral or written requests to be

24  housed separately from Rowland.

25       On June 15, 2009, Plaintiff filed her Original Complaint in this action (Doc. 1).  It

26  alleged that on October 8, 2008, Valenzuela told Plaintiff that Rowland knew Plaintiff

27

28

nonmovant's position).

- 4 -

1  "was snitching on him" (Doc. 1 at 7).  The Original Complaint alleged that on October 8,

2  2008, Plaintiff requested that correctional officers Renault, Ponce, and Mejia move

3  Rowland, and they refused.  The Original Complaint states, "Plaintiff was refused

4  adequate personal safety, and requested separation from assailant 12 days before 10-20-

5  08 assault."  It does not allege that Plaintiff submitted any written requests for separation.

6          On October 2, 2009, Plaintiff filed her First Amended Complaint, in which she

7  alleges that on October 8, 2008, she requested that Renault separate Plaintiff and

8  Rowland based on Plaintiff's conversation with Valenzuela, but they were not separated

9  (Doc. 7 at 5).  The First Amended Complaint does not allege that Plaintiff submitted any

10  written requests for separation.

11          On October 6, 2010, in support of her motion for summary judgment, Plaintiff

12  states that she wrote an inmate letter to Renault on October 8, 2008, and "subsequently"

13  handed it to Renault (PSOF ¶ 5).  In the letter Plaintiff attached to her declaration

14  supporting summary judgment, Plaintiff stated that Valenzuela told Plaintiff that Rowland

15  knew Plaintiff "was snitching on him" and that Rowland could only know that because

16  Renault told him (Doc. 97-1 at 25).  In that letter, Plaintiff requested that Renault move

17  Rowland before he became violent toward Plaintiff (id.).  Valenzuela states that she did

18  not have any conversations with Plaintiff on October 7 or 8, 2008, and Plaintiff did not

19  ask to be separated from Rowland (DSOF ¶¶ 10-11).  Renault states that she never

20  received an inmate letter dated October 8, 2008, from Plaintiff (id. ¶ 5).

21          Plaintiff also attached to her declaration inmate letters she claims to have written

22  on October 16, 2008, addressed to Renault and Valenzuela (PSOF ¶ 6).  In these letters

23  she reported that on October 16, 2008, Rowland accused Plaintiff of snitching on him

24  about his relationship with Renault and threatened Plaintiff with violence (id.).[5]  The

25

26          [5]Defendants object to PSOF ¶ 6 on hearsay grounds as to statements said to have been
    made by Rowland (DSCF ¶ 6).  The objection is overruled; Plaintiff's factual assertion is
27  supported by her declaration, she has personal knowledge of threats personally made against
    her, and her statement goes to her state of mind (Doc. 97-1 at 4-5, Pl. Decl. ¶¶ 6-7).  See Fed.
28  R. Civ. P. 56(c)(4); Fed. R. Evid. 803(3).

1 letters request that a Do-Not-House-With order be placed between Plaintiff and Rowland

2 (id.). Plaintiff's declaration does not state when or if Plaintiff gave the letters to anyone.

3 Both Renault and Valenzuela state that they never received either of the October 16

4 inmate letters or any similar inmate letter from Plaintiff (DSOF ¶¶ 6, 13).

5       Plaintiff states that Rowland was not subsequently placed on her Do-Not-House-

6 With list, and Rowland was released from prison in May 2009 (PSOF ¶¶ 11, 13; DSCF

7 ¶ 13).[6]

8       **B.**     **Legal Standard**

9       The Eighth Amendment protects prisoners from violence at the hands of other

10 prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To prevail on an Eighth

11 Amendment claim, a plaintiff must demonstrate facts that satisfy a two-part test that

12 shows the defendant was deliberately indifferent. Id. at 834. First, the plaintiff must

13 prove that objectively she suffered a sufficiently serious deprivation. Wilson v. Seiter,

14 501 U.S. 294, 298 (1991). Then, she must prove the subjective element; that the

15 defendant had a culpable state of mind—was deliberately indifferent—in allowing the

16 deprivation to occur. Id. at 298-99. A prison official has a sufficiently culpable mind

17 only if he "knows of and disregards an excessive risk to inmate health or safety; the

18 official must both be aware of facts from which the inference could be drawn that a

19 substantial risk of serious harm exists, and [the official] must also draw the inference."

20 Farmer, 511 U.S. at 837; Gibson v. County of Washoe, 290 F.3d 1175, 1187-88 (9th Cir.

21 2002).

22       Where an inmate's claim is based on the alleged failure to protect, she must show

23 that prison officials were deliberately indifferent to serious threats to her safety. See

24 Farmer, 511 U.S. at 834. The inmate may satisfy the "sufficiently serious" requirement

25 by showing the existence of "conditions posing a substantial risk of serious harm" to her.

26 Id. To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in

27

28

      [6]Defendants' objection to PSOF ¶ 11 on relevancy grounds is overruled (DSCF ¶ 11).

1   fact, the very obviousness of the risk may be sufficient to establish knowledge.  See id. at

2   842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

3         **C.**     **Analysis**

4             **1. Plaintiff's Motion**

5         Plaintiff asserts that on October 8, 2008, she made requests to Renault and

6   Valenzuela that she be housed separately from Rowland because Valenzuela told her that

7   Rowland "knew Plaintiff was snitching on him."  She further asserts that on October 16,

8   2008, she wrote Renault and Valenzuela inmate letters quoting threats made by Rowland

9   earlier in the day and requesting again that she be housed separately from Rowland.

10   Plaintiff claims that Renault and Valenzuela disregarded that threat in deliberate

11   indifference to her safety and on October 20, 2008, she was assaulted by Rowland during

12   which she suffered numerous injuries (Doc. 97-1 at 6-7, Pl. Decl. ¶ 9).

13         Plaintiff must prove that conditions existed that posed a substantial risk of serious

14   harm to her and that Renault and/or Valenzuela knew of and disregarded the excessive

15   risk.  Plaintiff's evidence includes her declaration and copies of inmate letters (Doc. 97-1

16   at 4-5, Pl. Decl. ¶¶ 6-7; Doc. 97-1 at 25-26, 28 (Oct. 8 and 16, 2008 inmate letters)).

17   Defendants assert that Plaintiff's summary judgment motion must be denied because they

18   deny that any of the conversations alleged by Plaintiff took place and they deny that they

19   ever saw any of the inmate letters that Plaintiff claims to have submitted prior to the

20   alleged assault (Doc. 111 at 15-16).

21         On Plaintiff's motion, Defendants' evidence is to be believed, and all reasonable

22   inferences that may be drawn from the facts must be drawn in their favor.  See Anderson,

23   477 U.S. at 255; Matsushita, 475 U.S. at 587.  Renault and Valenzuela submit their sworn

24   statements directly refuting Plaintiff's claims on every material fact related to Plaintiff's

25   failure-to-protect claim (Doc. 112, Ex. A, Renault Decl. ¶¶ 4-7; Ex. B, Valenzuela Decl.

26   ¶¶ 2-5).  Therefore, summary judgment for Plaintiff on Count I is not warranted.

27

28

1          **2.  Defendants' Motion**

2          On Defendants' motion, Plaintiff's evidence must be assumed to be true, and all

3   reasonable inferences that may be drawn from the facts must be drawn in her favor.  See

4   Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.  But where the record, taken as a

5   whole, could not lead a rational trier of fact to find for Plaintiff, there is no genuine issue

6   of material fact for trial.  See Matsushita, 475 U.S. at 586.  Moreover, "if the factual

7   context makes the non-moving party's claim *implausible,* that party must come forward

8   with more persuasive evidence than would otherwise be necessary to show that there is a

9   genuine issue for trial."  Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics,

10  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 587).

11         A district court should not ordinarily assess the parties' credibility to resolve a

12  motion for summary judgment.  See, e.g., Berry v. Baca, 379 F.3d 764, 769 (9th Cir.

13  2004); Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).

14  "However, when evidence is so contradictory and fanciful that it cannot be believed by a

15  reasonable person, it may be disregarded."  Jeffreys v. Rossi, 275 F. Supp. 2d 463, 476-

16  477 (S.D.N.Y. 2003) ("[The Plaintiff's] own testimony is so replete with inconsistencies

17  and improbabilities that a reasonable jury could not find that excessive force was used

18  against him."); see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th

19  Cir. 2002) (stating that uncorroborated allegations and "self-serving testimony" are

20  insufficient to create a genuine issue of material fact); Riley v. City of Montgomery, Ala.,

21  104 F.3d 1247, 1251 (11th Cir. 1997) (finding the plaintiff's "theory of the incident is

22  inherently incredible and could not support reasonable inferences sufficient to create an

23  issue of fact.").

24         On October 24, 2008, four days after Plaintiff was assaulted by Rowland, Plaintiff

25  submitted an inmate letter regarding the assault that did not request to be housed

26  separately from Rowland and did not state that she had previously requested separate

27  housing.  A month later, on November 24, 2008, Plaintiff submitted an Inmate Grievance

28  that did not request to be housed separately from Rowland and did not state that she had

- 8 -

1    previously submitted written requests for separate housing.  Both Plaintiff's Original

2    Complaint and her First Amended Complaint allege that on October 8, 2008, she

3    requested that she be separated from Rowland, but do not allege that she made any

4    written requests for separate housing.  The probability that Plaintiff wrote and submitted

5    requests for separate housing on October 8, 2008, and October 16, 2008, but failed to

6    mention them on October 24, 2008, November 24, 2008, and in either of her complaints

7    approaches zero.  Because Plaintiff's declaration that she made multiple requests in

8    writing to be housed separately from Rowland before the October 20, 2008 assault is

9    implausible, and Renault and Valenzuela deny having received any request from Plaintiff

10   for separate housing, Plaintiff is left with her uncorroborated and inconsistent accounts of

11   having made oral requests for separate housing before October 20, 2008.  Plaintiff has not

12   produced more persuasive evidence that Renault and Valenzuela knew of and disregarded

13   an excessive risk to Plaintiff's safety.

14       Thus, Defendants are entitled to summary judgment on Count I because the record,

15   taking Plaintiff's evidence to be true, could not lead a rational trier of fact to find that

16   either Renault or Valenzuela knew of and disregarded conditions that posed a substantial

17   risk of serious harm to Plaintiff.

18   **IV.    Count II–Dental Care**

19       **A.    Facts**

20       Plaintiff states that on October 20, 2008, following the assault, she was examined

21   by Nurse Daley (PSOF ¶ 14; DSOF ¶ 27).  Plaintiff states that on October 22, 2008,

22   Nurse Browning examined Plaintiff's right pinky finger and noted that it was purple and

23   swollen with edema; her finger was x-rayed (PSOF ¶ 15; DSCF ¶ 15).  Dr. Grant also

24   examined Plaintiff on October 22; he noted a fractured mandible and red and swollen

25   tissue (PSOF ¶ 16: DSCF ¶ 16; DSOF ¶ 28).  Dr. Grant requested that Plaintiff be seen by

26   an oral surgeon, ordered a liquid diet, and provided Acetaminophen for pain (DSOF

27   ¶ 28).

28

1    On October 27, 2008, Plaintiff underwent oral surgery with Dr. Thorpe in Gilbert,

2   Arizona (PSOF ¶ 17; DSCF ¶ 17).  Dr. Thorp inserted a bone plate and four screws and

3   extracted a tooth (id.).  During surgery, Plaintiff was administered various sedatives and

4   pain medications (DSOF ¶ 29).  Following surgery, Dr. Thorpe proposed the following

5   treatment plan:  open reduction concerning bone plate and screws, a liquid diet, and 100

6   mg Darvocet-N as needed (PSOF ¶ 17; DSCF ¶ 17; DSOF ¶ 43).[7]  That same day, when

7   she returned to prison, Plaintiff was given two Ibuprofen tablets by a dental assistant with

8   authorization by Dr. Vinluan (DSOF ¶ 30; PSCF ¶ 30).

9        On October 28, 2008, Plaintiff submitted a health needs request (HNR) in which

10  she complained about pain and four loose teeth (PSOF ¶ 18; DSCF ¶ 18).  That same day,

11  she saw Dr. Ricard, who noted Plaintiff's inability to open her mouth to maximum

12  opening (id.).  The next day, Plaintiff was at the Lewis dental clinic again complaining to

13  Dr. Grant of pain and loose teeth (PSOF ¶ 19; DSCF ¶ 19).  On November 7, 2008, Dr.

14  Grant saw Plaintiff and noted healing within normal limits and provided Ibuprofen for

15  any pain (DSOF ¶ 33).

16       On November 10, 2008, Plaintiff submitted an HNR in which she asked that the

17  loose teeth be extracted, and she wrote that she is "enduring daily increasing jolts of pain,

18  and it hurts to eat and sleep . . . . I'm exhausted from the pain" (PSOF ¶ 20; Doc. 97-3 at

19  88).  On November 15, 2008, Plaintiff submitted another HNR complaining about an

20  abscess around a fifth loose tooth (PSOF ¶ 21; Doc. 97-3 at 87).[8]  On November 17, 2008,

21  Dr. Ricard examined Plaintiff and noted that the abscess was due to trauma (PSOF ¶ 22;

22  DSCF ¶ 22).  Dr. Ricard evaluated Plaintiff's pain needs and determined that a

23  prescription of Ibuprofen was not necessary or warranted (DSOF ¶ 34).

24

25

26       [7]Reduction is restoration of a part to its normal anatomic relation, and open reduction
    is defined as "reduction by manipulation of bone, after surgical exposure of the site of the
27  fracture." Stedman's Medical Dictionary reduction (27th ed. 2000).

28       [8]Defendants' objections to PSOF ¶¶ 20-21 are overruled (DSCF ¶¶ 20-21); the
    documents support Plaintiff's assertions.

1    Plaintiff states that on November 20, 2008, Nurse Lawrence Ende and Nurse Pam

2    Hoffman examined Plaintiff for non-dental issues, but they also noted Plaintiff's jaw and

3    abscess condition (PSOF ¶ 23; Doc. 97-2 at 78).[9]  Plaintiff states that she was not aware

4    until this appointment that Dr. Thorp had recommended Darvocet following surgery, and

5    she had not received any Darvocet after the surgery (PSOF ¶ 23).  Nurse Ende prescribed

6    Darvocet to be taken twice a day for seven days (id.; Doc. 97-2 at 78; see Doc. 97-4 at 82,

7    Resp. to Interrog. 18).

8        On November 21, 2008, Dr. Grant extracted the abscessed tooth (tooth 21) and

9    issued gauze and salt packets to Plaintiff in addition to the already prescribed Ibuprofen

10   (PSOF ¶ 24; DSCF ¶ 24; DSOF ¶ 35).  On November 25, 2008, Plaintiff submitted an

11   HNR requesting to be seen because she was still experiencing pain in the area of her loose

12   teeth (PSOF ¶ 25).[10]  Plaintiff saw Dr. Joseph on December 5, 2008 (PSOF ¶ 26; DSOF

13   ¶ 37).  The parties dispute whether Plaintiff complained of pain or declared that she was

14   better at that time (PSOF ¶ 26; DSCF ¶ 26).  The dental record from this appointment

15   states "[Plaintiff] reported pain and loose teeth 23-24-25; Area 21 that is 'better

16   now'—Area 21 healing well.  23–25 have very little mobility" (Doc. 97-4 at 73).  No

17   treatment was done at that time (DSOF ¶ 37).

18       On January 28, 2009, Plaintiff submitted an HNR in which she complained of

19   ongoing pain near the gum line of her jaw fracture and stated that the pain is causing her

20

21       [9]Defendants' objection to PSOF ¶ 23 is sustained in part as to specific statements of
22   Nurse Ende and Hoffman (DSCF ¶ 23); the Court considers Plaintiff's assertion for the
     purpose of showing when she became aware that Dr. Thorp had recommended Darvocet. As
23   set forth above, there is no dispute that Dr. Thorp's treatment plan following surgery
     included this recommendation (PSOF ¶ 17; DSCF ¶ 17; DSOF ¶ 43).
24

25       [10]Defendants object to PSOF ¶ 25 on the basis that Plaintiff misconstrues the HNR and
     "is improperly embellishing the facts" by asserting that her HNR complained of "continuous"
26   pain because the word "continuous" is not in the document (DSCF ¶ 25).  In the HNR,
     Plaintiff wrote that she was "still having pain coursing at the gum area near [her] 4 loose
27   teeth" (Doc. 97-3 at 83).  Plaintiff's reference to this HNR as a complaint about continuous
     pain is appropriate.  Defendants' objection is unsupported and not helpful to the Court's
28   analysis.  See Fed. R. Civ. P. 11(b).  The objection is overruled.

1  to lose sleep (PSOF ¶ 27; Doc. 97-3 at 79).[11] Dr. Joseph saw Plaintiff on January 30,

2  2009 (PSOF ¶ 28; DSOF ¶ 39).  Plaintiff states that she complained of unbearable,

3  chronic pain, and that Dr. Joseph told her to submit another HNR in three months and her

4  healing will be evaluated (PSOF ¶ 28).  Defendants state that Plaintiff did not complain of

5  unbearable pain and that Dr. Joseph took an x-ray that showed Plaintiff's bone was

6  healing properly and there were no significant findings (DSCF ¶ 28).

7        Plaintiff submitted HNRs in April and May 2009 complaining about tremendous

8  pain and concern that two screws were shifting in her jaw (PSOF ¶¶ 31-32).[12]  Plaintiff

9  states that she was seen on May 29, 2009 by Drs. Grant and Joseph, and although she was

10  experiencing pain, she was not provided any pain medication (PSOF ¶ 33).  Defendants

11  state that at this May 29 appointment, Dr. Grant did not prescribe pain medication

12  because it was not necessary and Plaintiff did not request any (DSOF ¶ 41).

13        On or about June 18, 2009, Plaintiff saw the oral surgeon for screw removal from

14  the bone plate (DSOF ¶ 42; PSCF ¶ 42).  Plaintiff states that she still suffers electrical-

15  like jolts of pain in her gums almost two years after the assault (PSOF ¶ 41).[13]

16        **B.**    **Legal Standard**

17        To prevail on an Eighth Amendment medical or dental care claim, a prisoner must

18  demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d

19  1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  There are

20  two prongs to the deliberate-indifference analysis.  First, a  prisoner must show a "serious

21  medical need." Jett, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need

22

23      [11]Defendants' objection to PSOF ¶ 27 is overruled (DSCF ¶ 27); Plaintiff's assertion
24  is supported by the HNR.  See n. 10.

25      [12]Defendants' objections to PSOF ¶¶ 31-32 are overruled (DSCF ¶¶ 31-32); the
   subject HNRs are in the record and support Plaintiff's assertions (PSCF ¶¶ 31-32, citing Doc.
26  13, Ex. S).

27      [13]Defendants' objection to PSOF ¶ 41 is overruled (DSCF ¶ 41).  Plaintiff's factual
28  assertion is not a legal conclusion, it is supported by her declaration, and she has personal
   knowledge to testify as to the pain she suffers.

1 exists if the failure to treat a prisoner's condition could result in further significant injury

2 or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050,

3 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d

4 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of a serious

5 medical need include "[t]he existence of an injury that a reasonable doctor or patient

6 would find important and worthy of comment or treatment; the presence of a medical

7 condition that significantly affects an individual's daily activities; or the existence of

8 chronic and substantial pain." McGuckin, 974 F.2d at 1059-60.

9       Second, a prisoner must show that the defendant's response to that need was

10 deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is met if the prisoner

11 demonstrates (1) a purposeful act or failure to respond to a prisoner's medical need and

12 (2) harm caused by the indifference. Id. Prison officials are deliberately indifferent to a

13 prisoner's serious medical needs if they deny, delay, or intentionally interfere with

14 medical treatment. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). But a

15 delay in providing medical treatment does not constitute an Eighth Amendment violation

16 unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989)

17 (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

18 1985) (per curiam)).

19       A mere difference of opinion as to which medically acceptable course of treatment

20 should be followed does not establish deliberate indifference. See Sanchez v. Vild, 891

21 F.2d 240, 242 (9th Cir. 1989). Where doctors have chosen one course of action and a

22 plaintiff contends that they should have chosen another course of action, the plaintiff

23 "must show that the course of treatment the doctors chose was medically unacceptable

24 under the circumstances, . . . and the plaintiff must show that they chose this course in

25 conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90

26 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

27       Defendants make no argument that Plaintiff did not suffer from a serious medical

28 or dental need. See Jett, 439 F.3d at 1096. The evidence reflects that Plaintiff's broken

1  jaw and dental problems warranted surgery and ongoing treatment, which she received.

2  Thus, the deliberate-indifference analysis turns on whether Defendants were deliberately

3  indifferent to Plaintiff's pain management needs.

4  **C.    Analysis**

5       In Count II of her First Amended Complaint, Plaintiff defines the injury caused by

6  Drs. Grant, Ricard, and Joseph as "ongoing excruciating pain from deprivation of pain

7  medication." (Doc. 7 at 8.) She alleges that these defendants only offered her

8  "ineffective aspirin and ibuprofen on occasion" and denied her Darvocet, a narcotic pain

9  medication that she claims was effective in providing her pain relief. (Docs. 7 at 10, 11;

10  124 at 16.) She further alleges on three occasions after the October 20, 2008 assault she

11  was given "ineffective over-the-counter aspirin or ibuprofen," which never alleviated any

12  of her pain. She also alleges that since late November 2008, these defendants "adamantly

13  refuse Plaintiff effective pain medication for pain from serious physical injuries." (Doc. 7

14  at 10.) In her reply in support of her motion for summary judgment, Plaintiff states,

15  "Ibuprofen, aspirin, acetaminophen and penicillin have not been adequate pain relievers

16  for the Plaintiff," but "Darvocet was effective." (Doc. 124 at 16.) Thus, Plaintiff's claim

17  is that Drs. Grant, Richard, and Joseph were deliberately indifferent to her serious

18  medical need by prescribing ineffective pain medications, i.e., Acetominophen and

19  Ibuprofen, rather than Darvocet, which was effective. And she further contends that the

20  fact that a non-dental nurse prescribed a week's supply of Darvocet and an oral surgeon

21  outside the prison proposed treating with Darvocet demonstrates that Drs. Grant, Richard,

22  and Joseph should have continued to refill her Darvocet prescription for ongoing pain.

23       But a mere difference of opinion regarding treatment does not establish deliberate

24  indifference. See Sanchez, 891 F.2d at 242. Whether Drs. Grant, Richard, and Joseph

25  correctly or incorrectly relied on medical records showing that Plaintiff had previously

26  abused narcotic drugs is irrelevant to this Eighth Amendment claim. Further, it cannot be

27  assumed that Darvocet or any other pain medication would have successfully relieved all

28  of Plaintiff's pain from a broken jaw, insertion of a bone plate and four screws, tooth

1  extraction, loose teeth, a dental abscess, a second tooth extraction, removal of screws

2  from the bone plate, and related nerve damage.  The evidence shows Drs. Grant, Richard,

3  and Joseph provided Plaintiff with treatment based on their professional judgment and not

4  in conscious disregard of an excessive risk to Plaintiff's health.  Thus, Defendants are

5  entitled to summary judgment on Count II because the record, taking Plaintiff's evidence

6  to be true, could not lead a rational trier of fact to find that Drs. Grant, Richard, and

7  Joseph were deliberately indifferent to Plaintiff's serious medical need.

8          In her reply in support of her motion for summary judgment, Plaintiff also asserts

9  that on numerous occasions she submitted requests for pain evaluation, was examined and

10  often treated, and on some of those occasions not provided pain medication.  (Doc. 124 at

11  31-32.)  She further contends that no pain medication has been given to her since

12  December 2009.  (Id. at 16.)  She has not, however, stated that she requested any

13  medication other than Darvocet.  Further, because over-the-counter aspirin or ibuprofen

14  has been ineffective, Plaintiff cannot have been harmed by not receiving them more

15  frequently.  Moreover, any deliberate indifference to Plaintiff's serious medical needs

16  after December 2009 is outside the scope of this lawsuit filed in June 2009 after

17  concluding administrative proceedings.  Thus, to the extent that Plaintiff raises for the

18  first time in her reply a claim that Drs. Grant, Richard, and Joseph were deliberately

19  indifferent to Plaintiff's serious medical need by denying her non-prescription pain

20  medication, the claim is not properly before the Court.  Further, Drs. Grant, Richard, and

21  Joseph are entitled to summary judgment on that claim as well because, taking Plaintiff's

22  evidence to be true, a rational trier of fact could not find that Drs. Grant, Richard, and

23  Joseph were deliberately indifferent to Plaintiff's serious medical need by denying her

24  non-prescription pain medication.

25  **IT IS ORDERED:**

26          (1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion

27  for Summary Judgment (Doc. 96), and Defendants' Cross-Motion for Summary Judgment

28  (Doc. 111).

1    (2) Plaintiff's Motion for Summary Judgment (Doc. 96) is **denied**.

2    (3) Defendants' Cross-Motion for Summary Judgment (Doc. 111) is **granted**.

3    (4) The Clerk shall enter judgment in favor of Defendants and that the Plaintiff

4    take nothing.  The Clerk shall terminate this action.

5    DATED this 21st day of September, 2011.

6

7    _____

                    Neil V. Wake
8                   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28